## 63871. DAVIDSON et al. v. SMITH CANADIAN PEAT, INC.

POPE, Judge.

Smith Canadian Peat, Inc. obtained a judgment against United States Peat Corporation in the amount of $5,000.00 plus interest and attorney fees. In an attempt to collect this judgment Smith Canadian filed this action in garnishment naming as garnishees Richway, Inc.; Sears, Roebuck & Co.; and K-Mart Corporation. Only K-Mart held any money owed to U. S. Peat ($2,902.80) and this was paid into the registry of the court. Mr and Mrs. Charles L. Davidson, Sr. filed a claim to this money alleging a senior interest therein. Following a trial on the merits of this claim, a jury returned a verdict in favor of Smith Canadian. The Davidsons bring this appeal enumerating as error the trial court's denial of their motion for directed verdict and also the denial of their motion for judgment notwithstanding the verdict.

The only evidence presented at trial was the testimony of Eugene R. Simons, an Atlanta attorney, who was formerly a director and the corporate secretary of U. S. Peat. Although U. S. Peat is a Georgia corporation, its entire business operation was located in Green Pond, South Carolina. The corporation's only connection with Georgia was through Mr. Simons, who served as attorney and registered agent for the corporation and who kept the corporate minute books in his office in Atlanta.

Prior to ceasing operations in August of 1979, U. S. Peat was in the business of processing and packaging peat for sale to retailers such as Richway, Sears and K-Mart. Peat was removed from a peat bog, dried, cleaned, mixed with fertilizer, and then packaged for resale. On October 13, 1978 Mr. and Mrs. Charles L. Davidson, Sr., residents of Lithonia, Georgia, agreed to deposit a $100,000.00 certificate of deposit with a South Carolina bank as collateral for a loan to U. S. Peat. The Davidsons' son, Everett, is the president of U. S. Peat. As part of this transaction U. S. Peat assigned to the Davidsons " a security interest in all of its Accounts (meaning accounts, instruments, general intangibles, documents, contracts, contracted rights and choses in action) which it now owns or shall hereafter acquire. . . ." On November 20, 1978 the Davidsons filed a financing statement with the Secretary of State of South Carolina which gave notice of the Davidsons' security interest in the accounts of U. S. Peat. U. S. Peat defaulted on the loan to the South Carolina bank and as a consequence owed the Davidsons the sum of $6,738.00 plus interest.

Smith Canadian filed its lawsuit against U. S. Peat in September, 1978. Part of U. S. Peat's debt to Smith Canadian was paid as a result of the foregoing financing arrangement. Smith

Canadian obtained a favorable judgment on September 14, 1979 for the balance left unpaid. The subject garnishment action was filed on October 29, 1979.

The money tendered into court as a result of the instant garnishment was not sufficient to dispose of the claim by either Smith Canadian or the Davidsons. Accordingly, the issue for resolution in this case was which claim had priority. Distribution of money received by garnishment shall be made "... in accordance with the law governing the relative priorities of claims, judgments and liens." Code Ann. § 46-513. Under Georgia law a perfected security interest generally takes priority over the lien of a judgment creditor. See *Park Ave. Bank v. Bassford,* 232 Ga. 216 (205 SE2d 861 ) (1974); Code Ann. §§ 109A-9—310; 67-1701 (2); 67-1704. However, in a multiple state transaction such as that between the Davidsons and U. S. Peat, "[t]he law ... of the jurisdiction in which the debtor is located governs the perfection and the effect of perfection or nonperfection of the security interest." Code Ann. § 109A-9—103 (3) (b). "A debtor shall be deemed located at his place of business if he has one [or] at his chief executive office if he has more than one place of business. ... " Code Ann. § 109A-9—103 (3) (d). Comment No. 6 of the Georgia Revisers' Comments to Code Ann. § 109A-9—103 cites Comment 5(c) of the 1972 Uniform Commercial Code to explain that " 'Chief executive office' means 'the place from which in fact the debtor manages the main part of his business operation.' " Accordingly, South Carolina law governs the perfection and the effect of perfection of the subject security interest because the evidence of record is without dispute that U. S. Peat's place of business (or at least its chief executive office if Mr. Simon's office in Atlanta was also considered a place of business) was Green Pond, South Carolina.

S. C. Code of Laws 1976, § 36-9-301 (1) provides that "... an unperfected security interest is subordinate to the rights of ...(b) a person who becomes a lien creditor without knowledge of the security interest and before it is perfected. ... " S. C. Code of Laws 1976, § 36-9-301 (3) provides: "A *'lien creditor'* means a creditor who has acquired a lien on the property involved by attachment, levy or the like. ... " A judgment creditor is a "lien creditor" for the purposes of this statute. See South Carolina Reporter's Comments to S. C. Code of Laws 1976, § 36-9-301. Therefore, in order for the Davidsons to have recovered in the case at bar, they must have shown that their security interest had been perfected prior to the time Smith Canadian's garnishment was served on K-Mart, i.e., prior to October 30, 1979. S. C. Code of Laws 1976, § 15-19-540.

"A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken."

S.C. Code of Laws 1976, § 36-9-303(1). The evidence of record showed that the security interest attached on October 31, 1978. See generally S. C. Code of Laws 1976, § 36-9-204(1). The evidence also showed that a financing statement was filed on November 20, 1978 with the South Carolina Secretary of State. Thus, all steps which needed to be taken in order to perfect the subject security interest had been taken as of November 20, 1978. See S. C. Code of Laws 1976, §§ 36-9-302 (1); 36-9-401 (1) (c).

The foregoing evidence of record was without dispute or contradiction. This evidence showed that the Davidsons' security interest in the money collected by the garnishment had been perfected prior to Smith Canadian's perfection of its judgment lien. Therefore, the evidence demanded a verdict in favor of the Davidsons, and the trial court erred in denying their motion for directed verdict.

*Judgment reversed. Deen, P. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 8, 1981.

*Jere F. Wood,* for appellants.
*Bartow Cowden, Larry S. Bryant,* for appellee.